# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TEVIAN ROSE, as Special Administrator of the Estate of Robert Perry Selph,<br><br>Plaintiff,<br><br>v.<br><br>(1) KELLI KOCH, an individual; and<br>(2) LPL FINANCIAL LLC, a California limited liability company,<br><br>Defendants. | Case No. 6:24-cv-116-JAR |

## **OPINION AND ORDER**

Before the Court is the motion to dismiss [Dkt. 22] filed on behalf of defendant Kelli Koch ("Koch") pursuant to Fed. R. Civ. P. 9(b), 12(b)(2), and 12(b)(6). Plaintiff Tevian Rose, as Special Administrator of the Estate of Robert Perry Selph, timely responded in opposition [Dkt. 27] and Koch submitted a reply brief [Dkt. 30].[1]

Plaintiff initiated this action on March 6, 2024 in the District Court of Wagoner County, Oklahoma against defendants Koch and LPL Financial, LLC ("LPL"). [Dkt. 2-1]. On March 28, 2024, Koch removed the matter to this Court pursuant to 28 U.S.C. § 1332. [Dkt. 2]. Plaintiff thereafter filed an amended complaint setting forth claims for fraud, unjust enrichment, breaches of fiduciary duty, and seeking injunctive relief. [Dkt. 19].  By express consent of all parties [Dkt. 35], and pursuant to Fed. R. Civ. P. 73(a) and 28 U.S.C. § 636(c)(1), the undersigned exercises complete jurisdiction over this action through and including trial and the entry of a final judgment.

---

[1] For clarity and consistency herein, when the Court cites to the record, it uses the pagination and document numbers assigned by CM/ECF.

1

## I. PLAINTIFF'S ALLEGATIONS

Robert Perry Selph ("Decedent") died on or about December 10, 2023, leaving an estate situated in Wagoner County, Oklahoma, comprised of both real and personal property having a value in excess of $50,000. Prior to his death, Decedent maintained accounts with defendant LPL in which he deposited and retained a substantial sum of money. Plaintiff alleges that, as Decedent's health declined, defendant Koch inserted herself into his life under false pretenses, exerted undue influence over him, and manipulated him to alter certain aspects of his assets in order to facilitate her control of them following his death. Plaintiff further avers that Koch accessed Decedent's laptop and unilaterally modified information relating to his estate. [Dkt. 19, ¶¶ 8-17].

Immediately following the death of Decedent, Koch is alleged to have entered his Oklahoma residence, seizing possession of his computers, phone, and online accounts. She thereafter removed Decedent's laptop to her residence in Arkansas, where she continued accessing and altering estate information before attempting to erase its contents. According to plaintiff, these acts were undertaken in furtherance of a conspiracy to obtain control of Decedent's LPL account assets. Plaintiff further asserts that, in furtherance of said conspiracy, a representative of LPL applied his or her electronic signature to effect unauthorized changes to Decedent's accounts for Koch's benefit. Within days of Koch's assertedly unlawful seizure and conversion of Decedent's assets, plaintiff initiated the present action. Plaintiff further maintains

that, notwithstanding prompt notice of Koch's purported scheme, LPL gave notice of its intent to transfer Decedent's account assets to Koch. [*Id.*, ¶¶ 18-26].

## II.   STANDARD OF REVIEW

### A.   Rule 12(b)(2) | Lack of Personal Jurisdiction

When a defendant moves for dismissal under Rule 12(b)(2), the plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant. OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998) (citation omitted). "When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, … the plaintiff need only make a *prima facie* showing of personal jurisdiction to defeat the motion." Id. (citations omitted). "The plaintiff may make this *prima facie* showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." Id. at 1091. "In order to defeat a plaintiff's *prima facie* showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" Id. (*quoting* Burger King Corp. v. Rudzewicz ("Burger King"), 471 U.S. 462, 477 (1985)). The allegations of the complaint must be accepted as true to the extent they are uncontroverted by a defendant's affidavit. Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990).

### B.   Rule 12(b)(6) | Failure to State a Plausible Claim

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible

3

on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (*quoting* Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The question to be decided is "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." Lane v. Simon, 495 F.3d 1182, 1186 (10th Cir. 2007) (internal quotations omitted). In making this assessment, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." Waller v. City & Cty. of Denver, 932 F.3d 1227, 1282 (10th Cir. 2019).

### C.  Rule 9(b) | Failure to State a Plausible Claim with Particularity

"The dismissal of a complaint … for failing to satisfy the requirements of Rule 9(b) is treated as a dismissal for failure to state a claim" under Rule 12(b)(6). Seattle-First Nat'l Bank v. Carlstedt, 800 F.2d 1008, 1011 (10th Cir. 1986) (citation omitted). Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud." Clinton v. Security Benefit Life Ins. Co., 63 F.4th 1264, 1277 (10th Cir. 2023). "Rule 9(b)'s purpose 'is to afford [a] defendant fair notice' of plaintiff's claims and the factual grounds supporting those claims." George v. Urb. Settlement Servs., 833 F.3d 1242, (10th Cir. 2016) (alteration in original) (citation

omitted). "[T]he most basic consideration for a federal court in making a judgment as to the sufficiency of a pleading for purposes of Rule 9(b) … is the determination of how much detail is necessary to give adequate notice to an adverse party and enable that party to prepare a responsive pleading." U.S. ex rel. Lemmon v. Envirocare of Utah, Inc., 614 F.3d 1162, 1172 (10th Cir. 2010) (citation omitted).

### III.   ANALYSIS

#### A.   SPECIFIC PERSONAL JURISDICTION

Koch moves to dismiss the amended complaint for lack of personal jurisdiction based on the fact that she is a resident of Arkansas. [Dkt. 22 at 6 (*citing* Dkt. 19, ¶ 2)]. A federal district court may exercise jurisdiction over a properly served defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). The Supreme Court has distinguished between two types of personal jurisdiction: general and specific. *See* Daimler AG v. Bauman, 571 U.S. 117, 126-27 (2014). According to plaintiff, this Court has specific personal jurisdiction over Koch. *See* [Dkt. 27 at 3-6].

Specific jurisdiction over a nonresident defendant in a diversity action is proper if an applicable state statute authorizes service of process and if the exercise of jurisdiction comports with constitutional due process. Hood v. Am. Auto Care, LLC, 21 F.4th 1216, 1220 (10th Cir. 2021). Oklahoma's long-arm statute authorizes service of process and provides that an Oklahoma court "may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." 12 Okla. Stat. § 2004(F). Because "[n]o party has argued any state

constitutional objection," the relevant inquiry is "whether the United States Constitution places any limits on Oklahoma's ability to exercise jurisdiction" over Koch. Newsome v. Gallacher, 722 F.3d 1257, 1264 (10th Cir. 2013).

The Due Process Clause of the Fourteenth Amendment authorizes personal jurisdiction if two elements are met. "First, a defendant must have 'purposefully established minimum contacts with the forum state.'" Dental Dynamics, LLC v. Jolly Dental Grp., LLC ("Dental Dynamics"), 946 F.3d 1223, 1299 (10th Cir. 2020) (*quoting* Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "Second, the assertion of personal jurisdiction must comport with traditional notions of fair play and substantial justice." Id. (*citing* Burger King, 471 U.S. at 476).

1. **Minimum Contacts**

The minimum contacts test for specific personal jurisdiction has two requirements: (1) a defendant must have "purposefully directed its activities at residents of the forum state,"[2] and (2) the plaintiff's injuries must arise out of the defendant's forum-related activities. Benton v. Cameco Corp., 375 F.3d 1070, 1075 (10th Cir. 2004). With respect to the first requirement, purposeful direction ensures the defendant will not be haled into court in foreign jurisdictions solely as a result of "random, fortuitous, or attenuated contacts." Burger King, 471 U.S. at 475. The mere foreseeability of causing injury in another state is insufficient on its own to establish purposeful direction. Old Republic Ins. Co. v. Cont'l Motors, Inc. ("Old Republic"), 877

---

[2] Courts generally use the term "purposeful direction" in the tort context and "purposeful availment" in the contract context. Dudnikov v. Chalk & Vermillion Fine Arts, Inc., 514 F.3d 1063, 1077 (10th Cir. 2008)

F.3d 895, 905 (10th Cir. 2017). As for the second requirement, ensuring the injury arises out of a defendant's forum-related activities makes sure an adequate connection exists between the forum and the underlying controversy. *See* id. at 908.

### a.   *"Purposeful Direction" Requirement*

The parties' briefing implicates two frameworks for determining whether an out-of-state defendant's activities satisfy the purposeful direction requirement: (1) continuing relationships with a forum state resident, and (2) harmful effects in the forum state. In cases involving contractual contacts between the defendant and a forum state resident, the purposeful direction analysis often employs the first framework. *See* Burger King, 471 U.S. at 472-73. The Supreme Court articulated the latter framework in a specific jurisdiction case involving intentional torts tied to an out-of-state media defendant's nationwide distribution of allegedly defamatory material. *See generally* Calder v. Jones, 465 U.S. 783 (1984).

Plaintiff, who bears the burden of proof on the jurisdictional question, *see* Old Republic, 877 F.3d at 903, primarily relies on *Burger King*'s contract-based test to support her position that jurisdiction is proper because Koch formed a "continuing relationship" with Decedent across state lines. *See* [Dkt. 27 at 3-6]. Koch urges the Court to apply *Calder*'s tort-based test, asserting that the Tenth Circuit has consistently employed such framework in the context of torts committed by an out-of-state defendant.[3] *See* [Dkt. 22 at 7-8; Dkt. 30 at 3-6]. The Court deems it appropriate to analyze the record under both frameworks in turn.

---

[3] *See e.g.*, Dudnikov, 514 F.3d at 1071 (explaining that minimum contacts "can appear in different guises" depending on whether tort or contract claims are at issue); Anzures v. Flagship Rest.

7

### *i.    Continuing Relationships Test*

The typical purposeful direction analysis looks to the out-of-state defendant's "continuing relationships and obligations with citizens of [the forum state]." Burger King, 471 U.S. at 473 (quotations omitted). The Supreme Court "ha[s] upheld the assertion of jurisdiction over defendants who have purposefully 'reached out beyond' their State and into another by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State." Walden v. Fiore, 571 U.S. 277, 285 (2014) (*quoting* Burger King, 471 U.S. at 473).

Plaintiff asserts that jurisdiction exists because Koch engaged in a "continuing relationship" with Decedent. Plaintiff specially notes frequent out-of-state visits to Decedent's Oklahoma residence, regular calls and text messages, designation as Decedent's primary contact at his apartment complex, and travel across state lines to secure Decedent's belongings following his death. [Dkt. 27 at 4-5]. While direct communications with residents of the forum state can constitute "some evidence" of purposeful direction, Pro Axess, Inc. v. Orlux Distrib., Inc. ("Pro Axess"), 428 F.3d 1270, 1277 (10th Cir. 2005), "a defendant's relationship with a plaintiff or a third party, standing alone, is an insufficient basis for jurisdiction." Walden, 571 U.S. at 286 (citation omitted). Instead, courts must assess: "(a) the parties' 'prior negotiations,' (b) their 'contemplated future consequences,' (c) 'the terms of the[ir] contract,' and (d) 'the parties' actual course of dealing.'" Old Republic, 877 F.3d at 910

---

Grp., 819 F.3d 1277, 1280 (10th Cir. 2016) (evaluating tort claims under the harmful effects test notwithstanding the parties' contractual relationship); Niemi v. Lasshofer, 770 F.3d 1331, 1348 (10th Cir. 2014 (same); Dental Dynamics, 946 F.3d at 1231 (applying the harmful effects test to tort-based claims in a mixed tort and contract case).

(*quoting* Burger King, 471 U.S. at 479). Plaintiff's briefing does not address these four critical factors, nor does the amended complaint allege the existence of any contract between Koch and Decedent. Accordingly, plaintiff has not met her burden to show purposeful direction under the continuing relationships framework.

### ii.  *Harmful Effects Test*

Purposeful direction may also be established—even in the absence of continuing relationships—when an out-of-state defendant's intentional conduct targets and generates substantial harmful effects in the forum state. *See* Calder, 465 U.S. at 790-91. The harmful effects test analyzes whether an out-of-state defendant's purported tortious conduct satisfies three elements: "(1) an intentional act; (2) expressly aimed at the forum state; and (3) … knowledge that the brunt of the injury would be felt in the forum state." Dental Dynamics, 946 F.3d at 1231 (*citing* Dudnikov, 514 F.3d at 1072) (additional citation omitted).

The first *Calder* element—an "intentional action" by the defendant—requires little discussion. *See* Newsome, 722 F.3d at 1268. The Court finds that plaintiff has adequately alleged that Koch undertook intentional tortious action. *See* [Dkt. 19, ¶¶ 13-17, 28, 30-31, 35, 38 (describing Koch's purported undue influence on Decedent, who was vulnerable and in poor health, to induce him to convey and/or grant her access to convey over $10,000 in assets to Koch)]. *See* Dudnikov, 514 F.3d at 1073 (noting allegations of an intentional tortious act satisfy the first *Calder* element).

Under *Calder*'s second prong, a defendant's alleged tortious acts must be "expressly aimed" at the forum state. Calder, 465 U.S. at 789. Notably, "a plaintiff's

9

contacts with the defendant and forum" cannot "drive the jurisdictional analysis." Walden, 571 U.S. at 289. Rather, the forum state must be the "focal point" of the defendant's tortious conduct. Newsome, 722 F.3d at 1268; *see also* Walden, 571 U.S. at 290 ("The proper question is not whether the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects [her] to the forum in a meaningful way"). Plaintiff asserts that Koch, through false representations, intentionally established ongoing obligations between herself and Decedent by routinely engaging Decedent in virtual communication and by physically traveling to his residence in Oklahoma. [Dkt. 27 at 5-6; Dkt. 19, ¶¶ 14-17].

Plaintiff's allegations, accepted as true for purposes of this analysis, show that Koch purposefully cultivated an ongoing relationship with a resident of Oklahoma through deceptive conduct involving both travel and communication. Such intentional contact with the forum makes it reasonably foreseeable that any disputes arising from this relationship—particularly those affecting probate interests—would fall under the jurisdiction of Oklahoma law, as probate proceedings for an Oklahoma decedent must be commenced in Oklahoma courts. *See e.g.,* Matter of Est. of Fulks, 2020 OK 94, ¶ 24, 477 P.3d 1143 (*citing* 58 Okla. Stat. § 5). Oklahoma is therefore both the locus Koch's alleged activities and of the injuries alleged. The Court concludes that plaintiff has sufficiently pled conduct by an out-of-state defendant expressly aimed at Oklahoma, thereby satisfying the second and third prongs of the *Calder* analysis. Plaintiff has accordingly met her burden of establishing purposeful direction under the harmful effects framework.

### b.   *"Arising out of" Requirement*

The second step of the minimum contacts analysis requires the Court to determine whether plaintiff's alleged injuries "arise out of" Koch's forum-related activities. *See* Shrader v. Biddinger, 633 F.3d 1235, 1239 (10th Cir. 2011). "In order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State." Bristol-Myers Squibb Co. v. Super. Ct. of Cal., 582 U.S. 255, 264 (2017) (internal quotations and citation omitted). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." Id.

Plaintiff alleges that Koch "purposefully directed [her] activities at [a] resident[] of the forum," Benton, 375 F.3d at 1075, by traveling to Decedent's Oklahoma residence on multiple occasions for the purpose of exerting undue influence over Decedent and thereby obtaining control of estate assets. *See* [Dkt. 19, ¶¶ 15-17, 35]. Accepting these allegations as true at this stage, the Court concludes that plaintiff has sufficiently demonstrated the alleged injuries stem from, and are therefore connected to, Koch's forum-related conduct. *See* id. Accordingly, plaintiff has satisfied the second element of the specific jurisdiction analysis.

### 2.   **Fair Play and Substantial Justice (Reasonableness)**

Having found sufficient minimum contacts between Koch and Decedent, the Court "must still inquire whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice." Shrader, 633 F.3d at 1240

(quotations omitted). With minimum contacts established, "it is incumbent on defendant[] to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Dudnikov. 514 F.3d at 1080.[4] Koch has offered no reasons why the exercise of jurisdiction here would offend traditional notions of fair play and substantial justice. Therefore, plaintiff has made a *prima facie* showing of specific personal jurisdiction, and Koch's request for Rule 12(b)(2) dismissal is denied.

### B. FAILURE TO STATE A PLAUSIBLE CLAIM WITH PARTICULARITY

Plaintiff's second cause of action, which asserts claims for fraud and conspiracy to commit fraud against Koch and LPL, is subject to the heightened pleading requirements of Rule 9(b). The Tenth Circuit has interpreted Rule 9(b) to require a complaint to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." Koch v. Koch Indus., Inc., 203 F.3d 1202, 1236 (10th Cir. 2000) (internal quotation marks and citation omitted); *see also* Matthew v. LaBarge, Inc., 2009 WL 3673087 at *1 n.2 (N.D. Okla. Nov. 2, 2009) (citation omitted) ("Rule 9(b) applies to all averments of fraud … and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action."). While plaintiff's amended complaint identifies various instances of alleged fraudulent

---

[4] Courts determine whether jurisdiction is reasonable by considering the following factors: (1) the burden on defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest in furthering fundamental social policies. *See* Old Republic, 877 F.3d at 909; Pro Axess, 428 F.3d at 1279-80.

conduct, including physical access to Decedent's assets, changes to beneficiary information, and acts performed after Decedent's death, [Dkt. 19, ¶¶ 16-18, 20, 35-36], the allegations are devoid of the requisite detail regarding the substance of the misrepresentations, their timing, precise context, the assets wrongfully procured, and the manner in which each defendant participated in furtherance of the purported fraud. Absent these facts, which go to the very heart of Rule 9(b)'s purpose of deterring baseless claims and providing fair notice, the Court concludes that plaintiff's pleadings are insufficient under Rules 9(b) and 12(b)(6) to proceed on her claims for fraud and conspiracy to commit fraud as asserted against Koch. *See* Clinton, 63 F.4th at 1277. Koch is therefore entitled to dismissal of plaintiff's second cause of action.

## IV.    CONCLUSION

WHEREFORE, the motion to dismiss [Doc. 22] filed on behalf of defendant Kelly Koch is hereby **GRANTED IN PART** and **DENIED IN PART**.

IT IS SO ORDERED on this 25th day of September, 2025.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE