# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

TEVIAN ROSE, as Special Administrator of the Estate of Robert Perry Selph,

Plaintiff,

*v.*

(1) KELLI KOCH, an individual; and (2) LPL FINANCIAL LLC, a California limited liability company,

Defendants.

Case No. 6:24-CV-116-JAR

## OPINION AND ORDER

Before the Court is the motion to compel arbitration [Dkt. 23] [1] filed by defendant LPL Financial LLC ("LPL"). Plaintiff Tevian Rose ("Rose"), in her capacity as Special Administrator of the estate of Robert Perry Selph, timely filed a response [Dkt. 28], and LPL submitted a reply [Dkt. 31]. Following a period of limited discovery, LPL supplemented its motion to compel arbitration. [Dkt. 50], which drew another timely response from Rose [Dkt. 51], followed by LPL's reply [Dkt. 52].

## I. GOVERNING LAW

LPL moves the Court to compel arbitration of Rose's claims pursuant to Section 2 of the Federal Arbitration Act ("FAA"), which provides in pertinent part:

> A written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

[1] For clarity and consistency herein, when the Court cites to the record, it uses the pagination and document numbers assigned by CM/ECF.

9 U.S.C. § 2. Judicial review of such motions is governed by Section 4 of the FAA:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. ... If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

Spahr v. Secco, 330 F.3d 1266, 1269 (10th Cir. 2003) (*quoting* 9 U.S.C. § 4). Although "[t]he Supreme Court has 'long recognized and enforced a liberal federal policy favoring arbitration agreements,'" Nat'l Am. Ins. Co. v. SCOR Reinsurance Co., 362 F.3d 1288, 1290 (10th Cir. 2004) (*quoting* Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002)) (internal quotation marks omitted), "a court may compel arbitration of a particular dispute under § 4 of the FAA only when satisfied that the 'making' of the agreement to arbitrate is not at issue," Spahr, 330 F.3d at 1269 (*citing* Prima Paint Corp. v. Flood & Conklin Mfg., 388 U.S. 395, 404 (1967)).

It follows that "[t]he question of whether the parties have submitted a particular dispute to arbitration, *i.e.*, the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." Howsam, 537 U.S. at 83 (*quoting* AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986)). Whether the parties have formed a binding arbitration agreement "is simply a matter of contract between the parties." Walker v. BuildDirect.com Techs., Inc., 733 F.3d 1001, 1004 (10th Cir. 2013) (*quoting* Avedon Eng'g, Inc. v. Seatex ("Avedon"), 126 F.3d 1279, 1283 (10th Cir. 1997)). As such, courts "apply ordinary state-law principles that govern the formation of contracts to

determine whether a party has agreed to arbitrate a dispute." Id. (*quoting* Hardin v. First Cash Fin. Servs., Inc., 465 F.3d 470, 475 (10th Cir. 2006)).

"When parties dispute the making of an agreement to arbitrate, a jury trial on the existence of the agreement is warranted unless there are no genuine issues of material fact regarding the parties' agreement." Hardin, 465 F.3d at 475 (quoting Avedon, 126 F.3d at 1283) (internal quotation marks omitted). That is, "when factual disputes [seem likely to] determine whether the parties agreed to arbitrate, the way to resolve them ... is by proceeding *summarily* to trial." Howard v. Ferrellgas Partners, L.P., 748 F.3d 975, 984 (10th Cir. 2014) (emphasis in original). By contrast, "[w]hen it's apparent … that no material disputes of fact exist it may be permissible and efficient for a district court to decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration." Id. at 978 (*citing* Hancock v. Am. Tel. & Tel. Co., 701 F.3d 1248, 1261 (10th Cir. 2012)).

Crediting the party opposing arbitration—here, Rose—with "the benefit of all reasonable doubts and inferences that may arise," Hancock, 701 F.3d at 1261 (citation omitted), the Court follows a summary judgment-like procedure: the proponent of arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement; if it does so, the burden shifts to the nonmovant to raise a genuine dispute of material fact regarding the existence of an agreement. BOSC, Inc. v. Bd. of Cty. Comm'rs of Cty. of Bernalillo, 853 F.3d 1165, (10th Cir. 2017) (citations omitted). The object of § 4 of the FAA is "to decide quickly—

summarily—the proper venue for the case, whether it be the courtroom or the conference room, so the parties can get on with the merits of their dispute." Howard, 748 F.3d at 977.

## II. BACKGROUND

### A. UNDISPUTED MATERIAL FACTS [2]

Robert Perry Self ("Decedent") opened three accounts with LPL prior to his death. Two of these accounts—account number ****-1572 ("IRA Account") and account number ****-1482 ("Advisory Account")—remain active. [Dkt. 50-4 at 2-3, ¶¶ 6, 10, 21]. The IRA Account was opened by Decedent executing a Strategic Asset Management Programs Account Agreement ("SAM Agreement") by hand on December 10, 2019, naming his sister as sole beneficiary. [Dkt. 23-4 at 64, 66]. The Advisory Account is governed by a Transfer on Death Account Agreement ("TOD Agreement"), which Decedent executed using DocuSign on October 18, 2021, identifying his late brother's stepdaughter, defendant Kelli Koch ("Koch"), as sole beneficiary. [Dkt. 23-3 at 1, 3]. On the same date, Decedent executed an Account Update for the IRA Account via DocuSign, redesignating Koch as sole beneficiary. [Dkt. 50-4 at 32 (Exh. 7)].[3]

The agreements governing both the IRA and Advisory Accounts mandate binding arbitration under the Financial Industry Regulatory Authority ("FINRA").

[2] Unless otherwise noted, the following facts are undisputed.

[3] Whether Decedent personally executed the electronic signatures appended to these 2021 account documents is in dispute.

Under the terms the TOD Agreement relating to the Advisory Account, Decedent and LPL agreed as follows:

> *Any controversy* between *me, the beneficiaries hereunder or my/our successors, heirs, assigns, children, or spouse(s) and LPL shall be submitted to arbitration before FINRA*. ... This agreement contains a pre-dispute arbitration clause. By signing an arbitration agreement the parties agree as follows:
>
> - *All parties to this agreement are giving up the right to sue each other in court*, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.
> - Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.
> - The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.
> - The arbitrators do not have to explain the reason(s) for their award, unless, in an eligible case, a joint request for an explained decision has been submitted by all parties to the panel at least 20 days prior to the first hearing date.
> - The Panel of Arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.
> - The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases a claim that is ineligible for arbitration may be brought to court.
> - The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this agreement.

[Dkt. 23-3 at 2-3, ¶¶ 13-14 (emphasis added)]. The SAM Agreement governing the IRA Account contains a parallel arbitration provision:

> Client agrees to direct any complaints regarding the handling of Client's account to IAR and the LPL Legal Department in writing. This agreement contains a pre-dispute arbitration clause. By signing an arbitration agreement the parties agree as follows:
>
> - *All parties to this agreement are giving up the right to sue each other in court*, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

> - Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.
> - The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.
> - The arbitrators do not have to explain the reason(s) for their award, unless, in an eligible case, a joint request for an explained decision has been submitted by all parties to the panel at least 20 days prior to the first hearing date.
> - The Panel of Arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.
> - The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases a claim that is ineligible for arbitration may be brought to court.
> - The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this agreement.
>
> In consideration of opening one or more accounts for you, you agree that *any controversy between you and LPL and/or your IAR arising out of or relating to Account, transactions with or for you, or the construction, performance, or breach of this Agreement* whether entered into prior, on or subsequent to the date hereof, *shall be settled by arbitration in accordance with the rules, then in effect, of the Financial Industry Regulatory Authority*. Any arbitration award hereunder shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction. You understand that you cannot be required to arbitrate any dispute or controversy nonarbitrable under federal law.

[Dkt. 23-4 at 19, ¶ 25 (emphasis added)].

Donna Maddox ("Maddox"), a licensed financial advisor registered with LPL since 2017, first met with Decedent on December 11, 2019. At that meeting, Maddox assisted Decedent in opening the IRA Account with LPL. Decedent designated his sister as a temporary "placeholder" beneficiary of the account, with the understanding that his ultimate choice of beneficiary would be determined at a later date. [Dkt. 50-4 at 2-3, ¶¶ 4-7; *id.* at 21 (Exh. 2)]. On October 13, 2021, Maddox again met with Decedent at her office in Tulsa, Oklahoma. Decedent informed Maddox that

he planned to (i) sell his home and wished to invest the proceeds at LPL and (ii) transfer his Fidelity ESOP account and Arvest investment account to LPL. Maddox established two new LPL accounts for Decedent as a result of this meeting, including the Advisory Account. The next day, Decedent informed Maddox by telephone that he wished to designate Koch as sole beneficiary of each LPL account. Maddox subsequently emailed Decedent requesting Koch's information and advising that her assistant would provide the appropriate account paperwork for his signature. [*Id*. at 3-4, ¶¶ 8-14; *id*. at 23 (Exh. 3), 25 (Exh. 4), 27 (Exh. 5), 29 (Exh. 6)].

Following receipt of the 2021 account documents, Decedent contacted Maddox's assistant to confirm which forms required his signature via DocuSign. LPL business records reflect that Decedent executed the requisite documents on October 18, 2021. [*Id*. at 5-6, ¶¶ 19-21; *id*. at 27 (Exh. 5)]. As evidenced by the available Certificates of Completion, DocuSign recorded the dates and times Decedent accessed and electronically signed these account documents. The documents were delivered to Decedent's email address, and he was required to enter a personalized, alphanumeric "access code" to proceed with review and signature. [*Id*. at 6-7, ¶¶ 21-23; *id*. at 34-37 (Exh. 8), 127-31 (Exh. 15), 182-86 (Exh. 19); Dkt. 31-2; Dkt. 31-3].

**B. PROCEDURAL HISTORY**

Rose commenced this action on March 6, 2024 in the District Court of Wagoner County, Oklahoma against defendants LPL and Koch. [Dkt. 2-1]. On March 28, 2024, Koch removed the matter to this Court pursuant to 28 U.S.C. § 1332. [Dkt. 2]. Rose thereafter filed an amended complaint setting forth claims for fraud, unjust

enrichment, breach of fiduciary duty, and seeking injunctive relief. [Dkt. 19]. By express consent of all parties [Dkt. 35], and pursuant to Fed. R. Civ. P. 73(a) and 28 U.S.C. § 636(c)(1), the undersigned U.S. Magistrate Judge exercises complete jurisdiction over this action through trial and the entry of a final judgment.

LPL filed its motion to compel arbitration on May 3, 2024, asserting that Rose's claims are subject to arbitration under the SAM and TOD Agreements executed by Decedent. LPL maintained that both agreements irrevocably bind Rose in her capacity as Special Administrator of Decedent's estate. [Dkt. 23 at 2]. Rose contested the validity of the electronic signatures affixed to, *inter alia*, the TOD Agreement and submitted a forensic handwriting report purporting to demonstrate that Decedent did not execute the 2021 account documents. [Dkt. 28 at 3; Dkt. 28-1]. In reply, LPL pointed to Decedent's uncontested signature on the 2019 SAM Agreement and argued that Rose's handwriting expert failed to appreciate critical electronic signature protocols, specifically those attendant to the DocuSign digital signing platform, which creates court-admissible audit trails. [Dkt. 31 at 3-10].

On July 1, 2024, the Court held an in-person hearing to address Koch's motion to dismiss and LPL's motion to compel arbitration. [Dkt. 40; Dkt. 49 (Transcript of 7/1/2024 Hearing)].[4] Following the hearing, the Court authorized limited discovery through September 1, 2024, restricted to the issue of whether Decedent's signatures on the disputed account documents are authentic. [Dkt. 41]. The discovery period was

[4] By Order entered September 25, 2025, the Court partially granted and partially denied Koch's motion to dismiss. [Dkt. 56]. LPL's motion to compel addresses only the three claims brought by Rose against LPL, seeking arbitration exclusively for those claims rather than for the entire case.

later extended by Court order on three occasions: on September 11 through November 1, 2024 [Dkt. 43]; on November 5 through December 16, 2024 [Dkt 45]; and on January 3 through February 17, 2025, with a directive that LPL file a supplemental motion to compel arbitration by March 3, 2025 [Dkt. 48].

LPL timely filed the supplemental motion, reasserting its earlier arguments and submitting new evidence to support the authenticity of the disputed electronic signatures. [Dkt. 50 at 8-12]. LPL further observes that Rose, who has withdrawn reliance on her handwriting expert, now presents a computer forensic expert whose analysis establishes only that Decedent's laptop did not process the DocuSign, not that he failed to execute the 2021 account documents on another device. [*Id*. at 12-16]. Rose responsively maintains that no valid arbitration agreement exists and argues that the record does not conclusively identify Decedent as the individual who executed the 2021 account documents. [Dkt. 51 at 2-5]. Rose further asserts that resolution of the arbitration question would necessarily determine the merits, as authentication of the disputed signatures is central to each claim asserted against LPL. [*Id*. at 5-6].

## III. ANALYSIS

As noted, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Spahr, 330 F.3d at 1269 (*quoting* AT&T Techs., 475 U.S. at 648). And although the presence of an arbitration clause generally creates a presumption in favor of arbitration, ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1462 (10th Cir. 1995), "this presumption

disappears when the parties dispute the existence of a valid arbitration agreement," Dumais v. Am. Golf Corp., 299 F.3d 1216, 1220 (10th Cir. 2002). This Court examines the agreements at issue under general principles of Oklahoma contract law. *See* Hardin, 465 F.3d at 475. Arbitration may be compelled only if (1) a valid agreement exists and (2) the dispute falls within the scope of that agreement. AT&T Techs., 475 U.S. at 648-49; *see also* Johnson v. Convalescent Ctr. of Grady Cty., LLC, 2014 OK 102, ¶ 6, 341 P.3d 71, 73 ("A court asked to compel arbitration of a dispute must first determine whether the parties agreed to arbitrate that dispute.").

### A. VALIDITY OF THE AGREEMENTS TO ARBITRATE

Under Oklahoma law, formation of a valid contract requires (1) parties capable of contracting; (2) consent; (3) a lawful object; and (4) sufficient cause or consideration. 15 O.S. § 2. Rose acknowledges the existence of an arbitration "clause" within the "DocuSign agreements," yet insists that Decedent neither executed such agreements nor provided valid consideration. [Dkt. 51 at 2-3].[5] As a threshold matter, this Court observes that arbitration clauses exist in both the SAM and TOD Agreements, and that there is no dispute regarding Decedent's handwritten signature on the 2019 SAM Agreement. *See* [Dkt. 23-4 at 66]. Thus, the enforceability of the SAM Agreement's arbitration clause is not at issue.

---

[5] The 2021 account documents were executed through DocuSign, a widely used electronic signature platform that complies with the requirements of the U.S. Electronic Signatures in Global and National Commerce Act ("ESIGN"). *Are Electronic Signatures Legal?*, DOCUSIGN.COM, https://www.docusign.com/blog/are-electronic-signatures-legal?msockid=3fbf9d0ce63168b42c568ee8e7866932 (last visited Oct. 1, 2025). In general, electronic signatures that satisfy ESIGN's criteria are recognized as legally valid and binding. 15 U.S.C. § 7001(a). Courts nationwide have routinely upheld the enforceability of DocuSign signatures. *See* [Dkt. 31 at 2 n.1 (collecting cases)].

### 1. Sufficiency of Consideration

Rose initially asserts that the TOD Agreement fails for lack of consideration, pointing to an alleged deficiency in the record as to whether Decedent was the individual who executed the pertinent electronic signatures. [*Id*. at 3; Dkt. 28 at 3]. This contention conflates the requirements of consideration with those of signature authenticity. Whether Decedent signed the account documents is a matter of contract formation, not a reflection on whether consideration exists. Under Oklahoma law, "consideration exists as long as there is a benefit to the promisor or a detriment to the promisee." Thompson v. Bar-S Foods Co., 2007 OK 75, ¶ 19, 174 P.3d 567, 574; *see also* 15 O.S. § 106. The act of opening an investment account inherently includes consideration, given the mutual exchange of obligations and benefits between the client and the account provider. Rose's assertion that the arbitration clause in the TOD Agreement is invalid for want of consideration misapprehends controlling law.

### 2. Authenticity of Electronic Signatures

Rose further claims the electronic signatures on the 2021 account documents are fraudulent in that they were executed by someone other than Decedent. [Dkt. 28 at 3; Dkt. 51 at 6].[6] In the alternative, through the testimony of her digital forensic

[6] It a settled rule in Oklahoma that "fraud is never presumed and where a written agreement is attacked on the ground of fraud, that agreement will be upheld unless the allegations of fraud are established by clear and convincing evidence." Funnell v. Jones, 1985 OK 73, ¶ 14, 737 P.2d 105, 108 (citation omitted). In Rose's amended complaint, the allegations of fraud against LPL are limited to a claim that the company aided Koch in unlawfully altering beneficiary designations on estate assets held by LPL. [Dkt. 19, ¶ 36]. As LPL correctly notes, the record contains no evidence that Decedent's estate was ever named as a beneficiary to any LPL account. [Dkt. 31 at 3]. Moreover, the issue of beneficiary designations is unrelated to the arbitration clause in question. To the extent Rose alleges fraud in the execution of the TOD Agreement, such claim is legally insufficient in the absence of clear and convincing evidence. *See e.g.,* Brooks v. LeGrand, 1967 OK 187, ¶ 11, 435 P.2d 142, 145; Hembree v. Douglas, 1934 OK 600, ¶ 7, 37 P.2d 314, 316.

expert, Alvey Matlock ("Matlock"), Rose contends that the absence of direct evidence linking Decedent to the DocuSign signatures from his own computer undermines LPL's demand for arbitration. [Dkt. 51 at 4 (*citing* Doc. 51-1 at 95 (95:17-19))]. Under Oklahoma law, a valid contract requires mutual consent, or a "meeting of the minds." Hampton v. Surety Dvlp. Corp., 1991 OK 94, ¶ 7, 817 P.2d 1273, 1274; *see also* 15 O.S. § 2. The consent of the parties to a contract must be free, mutual, and communicated by each to the other. In re De-Annexation of Certain Real Prop. From City of Seminole, 2009 OK 18, ¶ 9, 204 P.3d 87, 89 (*citing* 15 O.S. § 51). "[C]onsent is not mutual unless the parties all agree upon the same thing in the same [sense]." Id. (*citing* 15 O.S. § 66).

LPL responds by challenging the scope and foundation of Matlock's investigation, emphasizing that evidence of electronic signature is not limited solely to Decedent's computer. Matlock himself admitted that he did not examine Decedent's cell phone due to budget constraints and acknowledged that further research would be necessary regarding whether any other device was used to execute the 2021 account documents. [Dkt. 51-1 at 34 (34:1-7), 95-96 (95:7-96:14)]. In addition, LPL points to the following circumstantial and documentary evidence: (1) Certificates of Completion generated by DocuSign, which provide detailed timestamps and authentication data for Decedent's electronic signatures; and (2) the testimony of Maddox, who affirmed her reliance on this metadata in concluding that he executed the 2021 account documents, [Dkt. 51-3 at 85-86 (85:12-86:19)].

LPL's argument underscores the implausibility of Rose's challenge to signature authenticity, which demands acceptance of an almost fantastical chain of deceptions contrary to the established relationship and practices between Decedent, LPL, and Maddox.[7] If, as Rose alleges, Decedent's 2021 accounts were created without his consent or knowledge, he would have been wholly ignorant of the whereabouts of proceeds from the sale of his home and the savings transferred from his Fidelity ESOP and Arvest accounts into LPL. *See* [Dkt. 50-4 at 27 (Exh. 5)]. Moreover, Maddox testified to meeting with Decedent quarterly with no record or testimony of Decedent expressing concern or confusion about account transfers or balances, [Dkt. 51-3 at 34 (34:6-18), 88 (88:16-20), 93 (93:12-21)], and there is no evidence that Decedent reported missing funds to law enforcement, financial institutions, or family members. Courts in Oklahoma, as elsewhere, are empowered to reject patently implausible scenarios unsupported by evidence. *See e.g.,* First Nat'l Bank & Trust Co. of Vinita v. Kissee, 1993 OK 96, ¶ 8, 859 P.2d 502, 505; Robbins v. Oklahoma, 519 F.3d 1242, 1247-48 (10th Cir. 2008).

While not cited by LPL, Oklahoma's Uniform Electronic Transactions Act ("UETA") expressly recognizes the validity of electronic signatures so long as they are attributable to the purported signer by any reliable means, including audit trails, security codes, and related metadata. *See* 12A O.S. §§ 15-103—09, 15-115; *see also*

[7] Specifically, LPL asserts that accepting Rose's narrative would require the Court to believe an individual successfully impersonated Decedent at every material juncture, including during each in-person and telephonic interaction with Maddox reaching back to 2019, accessing Decedent's email account, obtaining his unique DocuSign access code, electronically signing all 2021 account documents, naming Koch as sole beneficiary on all LPL accounts, and surreptitiously concealing all of these actions from Decedent himself. [Dkt. 52 at 5].

Buckhalter v. J.C. Penney Corp., Inc., No. 3:11-CV-752-CWR-FKB, 2012 WL 4468455 (S.D. Miss. Sept. 25, 2012) (recognizing validity of electronic signature of arbitration agreement under Mississippi's UETA). Rose notably relies on a decision from the California Court of Appeals holding the moving party failed to establish that an electronic signature was in fact "the act of" the nonmovant, as required under California's enactment of the UETA. Ruiz v. Moss Bros. Auto Grp., Inc., 232 Cal. App. 4th 836, 844, 181 Cal. Rptr. 3d 781, 788 (2014). In that case, the defendant failed to demonstrate attribution by failing to show how the signature process was secured or exclusively connected to the plaintiff. Id. (*citing* Cali. Civ. Code § 1633.9(a)).[8]

In this case, upon careful review of the record and relevant legal principles, the Court finds that Rose has not met her burden to present substantial evidence undermining the authenticity or attribution of Decedent's electronic signatures on the 2021 account documents. *See* 12A O.S. § 15-109; Funnell, ¶ 14, 737 P.2d at 108. While she relies on Matlock's expert opinion regarding the lack of direct evidence from Decedent's personal computer, this assertion does not preclude the possibility that Decedent executed the documents using other devices, such his cell phone, nor does it refute the circumstantial and documentary evidence offered by LPL. The Certificates of Completion and related DocuSign records, together with Maddox's credible deposition testimony and sworn affidavit, corroborate that Decedent had

[8] *Compare* Cali. Cal. Civ. Code § 1633.9(a) ("An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.") *with* 12A O.S. § 15-109(a) (same statutory language).

both the opportunity and means to execute the disputed documents, and there is no affirmative evidence suggesting that these actions were the result of fraud. Moreover, Rose's theory of impersonation is both unsupported by the record and is facially implausible given the consistent and ongoing relationship between Decedent and Maddox, and the absence of any reported concern or irregularity regarding the management or transfer of his assets. The Court concludes that the record establishes mutual consent and a valid meeting of the minds between Decedent and LPL, as required under Oklahoma contract law.

### B. APPLICABILITY OF THE FEDERAL ARBITRATION ACT

There is no dispute that Rose's allegations against LPL fall within the TOD and SAM Agreements. Her claims for fraud, breach of fiduciary duty, and request for injunctive relief are clearly encompassed within the definition of "any controversy" under the arbitration clauses contained within both agreements. *See* [Dkt. 23-3 at 2, ¶ 13; Dkt. 23-4 at 19, ¶ 25]. Therefore, the Court concludes the language of the arbitration provisions to be sufficiently broad, clear, and enforceable. *See* Sanchez v. Nitro-Lift Tech., LLC, 762 F.3d 1138, 1146 (10th Cir. 2014) (applying three-part test to determine whether an issue falls within the scope of an arbitration clause). The parties are directed to submit the relevant disputes to FINRA for adjudication, as required by their account agreements and controlling law.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that LPL's motion to compel arbitration [Doc. 23] is hereby **GRANTED**. The parties shall file notice in this Court within 15 days of completion of arbitration.

IT IS FURTHER ORDERED that Rose's claims against Koch are **STAYED** pending completion of arbitration. The Clerk of Court shall, pursuant to LCvR 41.1, administratively close this case pending either an order of the Court reopening the action, or until this case is dismissed with prejudice by stipulation of the parties.

IT IS SO ORDERED on this 6th day of October, 2025.

JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE